STATE OF NORTH CAROLINA v. ROBERT CORNELIUS PICHE

No. 9010SC759

(Filed 7 May 1991)

1. **Homicide § 21.7 (NCI3d)— second degree murder—evidence sufficient**

There was substantial evidence from which the jury could conclude that an assault was likely to cause death or serious bodily injury where the evidence indicates that defendant struck the victim on the head with a handgun with such force that the victim was knocked instantly to the pavement; the victim hit the pavement with sufficient force to shatter a bottle and cause punctures to his face and to cause bone fragments to enter his brain; and the victim at the time of the autopsy was five feet six inches tall and weighed only ninety-eight pounds.

**Am Jur 2d, Homicide §§ 53, 245.**

STATE v. PICHE

[102 N.C. App. 630 (1991)]

2. **Homicide § 30.3 (NCI3d)— instruction on involuntary manslaughter denied—no evidence to negate intentional killing**

The trial court did not err in a homicide prosecution by denying defendant's request for a jury instruction on involuntary manslaughter where there was no evidence to negate the intentional killing element of second degree murder. The evidence reveals a blow to the head of such force that it knocked the victim to the ground and that the injury causing death could reasonably be attributed only to the victim's face striking and shattering a beer bottle. The focus is not on the actual injury but upon the act of assault itself and whether such an assault is likely to cause death or serious bodily injury.

**Am Jur 2d, Homicide §§ 70, 531.**

3. **Constitutional Law § 287 (NCI4th)— homicide—motion for appointment of new counsel—denied—no error**

The trial court in a homicide prosecution did not err by denying defendant's motion for a new counsel where defendant did not show that his counsel's representation was deficient or that there was a reasonable possibility that there would have been a different result but for counsel's inadequate representation.

**Am Jur 2d, Criminal Law § 985.**

4. **Criminal Law § 78 (NCI4th)— homicide—motion for change of venue—denied—no error**

The trial court in a homicide prosecution did not err by denying defendant's motion for a change of venue where defendant did not show that jurors had prior knowledge concerning the case, that defendant exhausted peremptory challenges, and that a juror objectionable to defendant sat on the jury.

**Am Jur 2d, Criminal Law §§ 378 et seq.**

5. **Criminal Law § 1216 (NCI4th)— second degree murder— mitigating factor—acting under threat—evidence insufficient**

The trial court did not err when sentencing defendant for second degree murder and assault with a deadly weapon by failing to find in mitigation that defendant acted under a threat insufficient to constitute a defense but which significantly reduced his culpability. The evidence indicates that defendant was the initial and only aggressor; there is no credible

evidence that the victim or any of his friends ever threatened defendant; the evidence indicates that the victim's friends were afraid of defendant; and defendant opened his automobile trunk and took out a shotgun once he had reached his car rather than leave, and returned to the car for a handgun when the shotgun broke.

**Am Jur 2d, Criminal Law §§ 598, 599.**

6. **Criminal Law § 1259 (NCI4th)— second degree murder and assault—mitigating factor—voluntary acknowledgment of wrongdoing—acknowledgment after arrest**

The trial court did not abuse its discretion when sentencing defendant for second degree murder and assault by failing to find in mitigation that defendant voluntarily acknowledged wrongdoing where defendant made his statement after he was arrested. To be absolutely entitled to a finding of this mitigating factor, defendant must make his confession prior to the issuance of a warrant or information, prior to the issuance of a true bill of indictment or presentment, or prior to arrest, whichever comes first; otherwise, it is for the trial court to determine in its discretion whether the statement was made at a sufficiently early stage.

**Am Jur 2d, Criminal Law §§ 598, 599.**

APPEAL by defendant from judgments entered 19 March 1990 in WAKE County Superior Court by *Judge Howard E. Manning, Jr.* Heard in the Court of Appeals 18 January 1991.

*Lacy H. Thornburg, Attorney General, by Mary Jill Ledford, Assistant Attorney General, for the State.*

*John T. Hall for defendant-appellant.*

GREENE, Judge.

Defendant, Robert Cornelius Piche, was charged on 29 July 1989 with second-degree murder and assault with a deadly weapon. On 19 March 1990, the jury returned verdicts of guilty of both offenses. Defendant was sentenced to thirty-five years imprisonment for second-degree murder, and two years imprisonment for assault with a deadly weapon to begin at the expiration of the thirty-five year term. Defendant appeals.

Before trial, defendant moved for a change of venue and for the appointment of a new attorney. Both motions were denied.

The evidence presented by the State at trial tends to show that on 29 July 1989 the victim, Ming Hai Loo (Loo), met his friend, Minh Van Lam, at a club called the Cue N Spirits. They began playing pool, and over a short period of time they were joined by Jim Ta, Lanh Tang, Tai Trong Le, Ton That Thainguyn, and Hong Thanh Nguyen.

At some point, defendant's brother, Lloyd Piche, approached Loo and Lam and challenged them to a game of pool. Loo and Lam refused the invitation. Over an unspecified period of time, defendant, sometimes with and sometimes without Lloyd, repeatedly went to Loo's table and made threatening and racial comments. Defendant stated he was going to "finish you," and that "your ass is grass." Defendant cursed often, and told the Asians he did not like them, stating that "because of you people all brothers and friends went to Vietnam [and] never came back. . . ." At one point, defendant stood face to face with Tang and began cursing him. The bartender pushed defendant back and defendant pointed at Tang and said, "You're not leaving anywhere, we're going to finish you off tonight," and that "sooner or later the bar is going to close and we're going to have to leave so there is not way [sic] we [sic] can escape."

Hong decided to call the police and he and Loo approached the bar. Defendant and Lloyd confronted Loo, and defendant had removed his belt and wrapped it around his hand with the buckle hanging down. Defendant stated that he wanted to go outside and fight. Jim Ta testified that they tried to leave, and that after they were outside he told defendant they were going home.

Once outside, defendant went to his car and obtained a shotgun. Defendant pointed the gun at Tang, who started walking backward as defendant approached him with the gun. Defendant then swung the gun at Tang and missed him. As Tang was walking backward, Lloyd approached Tang from behind and tried to pin his head down to the hood of a car. Tang escaped and began walking backward again. Defendant turned the gun around, holding the barrel end, and ran toward Tang. Defendant then "took the hardest swing I had ever seen," but Tang ducked away and was not hit. The gun fell out of defendant's hand and broke when it hit the pavement.

Defendant then returned to his car and obtained a handgun. Defendant chased Tang down the sidewalk with the gun in his hand.

When defendant returned from chasing Tang, Loo and Ta were standing by a bench in front of the club. Defendant approached them and hit Loo in the head with the gun. Loo fell and hit his head on a beer bottle he had been holding, shattering the bottle. Hong testified that, after Loo had fallen, he noticed that the beer bottle was broken and that Loo's eye was bloody.

The State presented the testimony of Dr. Danosi who was working in the emergency room of Wake Medical Center when Loo was admitted. Dr. Danosi testified that he noticed an injury to Loo's left eye. A CT scan and x-rays were ordered. The scan revealed bleeding in the brain tissue and what appeared to Dr. Danosi to be bone fragments in the frontal areas of the brain.

Dr. Boone, a neurosurgeon, testified that he was called to the emergency room to examine Loo and that he ultimately performed an operation on Loo. Dr. Boone testified that based upon his examination he diagnosed severe brain injury resulting from trauma. While Dr. Boone could not state what the trauma was, he testified that his review of the CT scan revealed that bone fragments had been driven up through the nasal sinuses and into the base of the brain and into both frontal lobes of the brain. Though surgery was performed, Loo died.

The State then presented the testimony of Dr. Scarborough who conducted an autopsy in this case. At the time of the autopsy, Loo was five feet, six inches tall, and weighed ninety-eight pounds. Dr. Scarborough noticed much bruising around the left eye. He further observed a "stab wound" which was approximately one-half inch long in the corner of the eye. There was also a small cut on top of the head, and there was a small amount of hemorrhaging on the top surface of the brain. Dr. Scarborough testified that he saw no other injury which could have caused death other than the stab wound to the front of Loo's face. On cross-examination by defendant, Dr. Scarborough testified that the small amount of hemorrhaging on the top surface of the brain could have been caused by the stab wound to the eye, by a fall, or by a blow to the head. The cut on top of Loo's head was approximately four-tenths of an inch long and was superficial in that it did not extend down to bone. Dr. Scarborough further testified that the hemorrhaging on the top surface of the brain would not generally be

considered lethal, and that the cut on top of Loo's head would not generally be considered a serious injury by itself.

Defendant presented no evidence.

During the charge conference, defendant requested and was denied a jury instruction on involuntary manslaughter. The trial court instructed the jury on second-degree murder and voluntary manslaughter.

During sentencing, the trial court found as an aggravating factor that "defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement." The trial court found no mitigating factors.

---

The issues are: (I) whether the trial court erred by denying defendant's motion to dismiss the charge of second-degree murder based on insufficiency of evidence; (II) whether the trial court erred by denying defendant's request to instruct the jury on the offense of involuntary manslaughter; (III) whether the trial court erred by denying defendant's motion for appointment of new counsel; (IV) whether the trial court erred by denying defendant's motion for change of venue; and (V) whether the trial court erred by failing to find mitigating factors during the sentencing phase.

We first observe that defendant's assignments of error are defective in that they fail to assert the legal basis upon which error is assigned as required by N.C.R. App. P. 10(c)(1). Nonetheless, we suspend the rules as provided by N.C.R. App. P. 2 and address the merits of the appeal.

I

[1] Defendant first argues the trial court erred in denying his motion to dismiss the charge of second-degree murder. In determining whether the evidence is sufficient to support a verdict of second-degree murder, the evidence is viewed in the light most favorable to the State, and the State is entitled to every reasonable inference which can be drawn from the evidence. *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). The court must determine whether there is substantial evidence of each essential element of the crime charged, and if so, the motion to dismiss must be denied and the case submitted to the jury. *State v. Autry*, 101 N.C. App. 245, 251, 399 S.E.2d 357, 361 (1991). Substantial evidence

is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*

The essential elements the State must prove to support a verdict of guilty of second-degree murder are: (1) an intentional killing; (2) committed with malice; and (3) proximately causing death. *State v. Ray*, 299 N.C. 151, 158, 261 S.E.2d 789, 794 (1980); *State v. Wilkerson*, 295 N.C. 559, 580, 247 S.E.2d 905, 917 (1978). In this case, defendant argues only that there was insufficient evidence of an intentional killing. Specifically, while defendant concedes this element does not require a specific intent to kill, defendant contends that under the factual circumstances of this case defendant must have committed a felony assault to establish the element of an intentional killing.

The applicable rule in this case is that one commits an "intentional killing," for purposes of the offense of second-degree murder, if one commits "an act of assault which in itself amounts to a felony *or* is likely to cause death or serious bodily injury." *Ray* at 158, 261 S.E.2d at 794 (emphasis added). It is, therefore, not necessary in all cases to establish felonious assault.

The evidence in this case indicates that defendant struck the victim on the head with a handgun with such force that the victim was knocked instantly to the pavement, and that the victim hit the pavement with sufficient force to shatter a bottle and cause punctures to the victim's face, and to cause bone fragments to enter the victim's brain. The record also indicates that the victim, at the time of autopsy, was five feet, six inches tall, and weighed only ninety-eight pounds. Even assuming, *arguendo*, that the assault did not amount to a felony assault, an issue we need not decide, there is substantial evidence from which the jury could conclude that the assault was one "likely to cause death or serious bodily injury" and was, therefore, an "intentional killing." *Ray.* We therefore find no error in the trial court's denial of defendant's motion to dismiss based on an insufficiency of evidence to support the element of an "intentional killing."

II

[2] In a related assignment of error, defendant contends the trial court erred in denying his request for a jury instruction on involuntary manslaughter. Involuntary manslaughter is a lesser included offense of second-degree murder. *State v. Thomas*, 325 N.C. 583,

591, 386 S.E.2d 555, 559 (1989). Regarding the submission of lesser included offenses to the jury, our Supreme Court has stated:

> The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense [charged] . . . and there is *no* evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of [the lesser included offense].

*State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *modified on other grounds, State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986).

Defendant argues that there was some evidence which negates the element of intentional killing. We disagree.

The evidence reveals that the blow to the head was of such force that it knocked Loo to the ground. The evidence from the autopsy report indicates that the cause of death was the injury to Loo's eye and face. These injuries could reasonably be attributed only to the fact that Loo's face, subsequent to the assault, struck and shattered the beer bottle. However, the focus here is not on the actual injury suffered by Loo, or upon the severity of the actual injury, but upon the act of assault itself and whether such an assault is likely to cause death or serious bodily injury. It must be noted that while Dr. Scarborough testified that the hemorrhaging on the top surface of the brain and the cut on top of Loo's head would not generally be considered serious injuries, there was no evidence to show that the act of striking another person in the head with a handgun with sufficient force to knock that person to the ground is not an assault likely to cause death or serious bodily injury. *See State v. Ray*, 299 N.C. 151, 158, 261 S.E.2d 789, 794 (1980) (intentional killing is committed where one commits an act of assault which in itself amounts to a felony or is likely to cause death or serious bodily injury).

We therefore find no evidence to negate the intentional killing element of second-degree murder. Accordingly, the trial court's denial of defendant's request for a jury instruction on involuntary manslaughter was not error.

## III

**[3]** Defendant next argues that the trial court erred in denying his motion for the appointment of new counsel. Defendant's motion can be summarized as allegations that defendant and his attorney did not communicate well, that his attorney was not fully dedicated to his case, and that his attorney did not prepare a defense. Defendant's primary concern, from reviewing the motion, was that his attorney often advised him to plead guilty because he felt a jury would convict defendant.

In order to obtain a new trial based on ineffective assistance of counsel, a defendant must show that his counsel's representation was deficient and that there is a reasonable possibility that, but for counsel's inadequate representation, there would have been a different result. *State v. Austin*, 75 N.C. App. 338, 341, 330 S.E.2d 661, 663 (1985). Defendant has shown neither requirement in this case. "Disagreement over trial tactics and communication problems generally do not make the assistance of counsel ineffective." *State v. Callahan*, 93 N.C. App. 579, 582, 378 S.E.2d 812, 814, *disc. rev. denied*, 325 N.C. 274, 384 S.E.2d 521 (1989). Defendant has not pointed to any prejudicial error of counsel, nor referred to any defense which would have changed the outcome of defendant's trial.

## IV

**[4]** Defendant next argues the trial court erred in denying his motion for a change of venue. Defendant's motion alleged "that there exists in the Tenth Judicial District so great a prejudice against the defendant that he cannot obtain a fair and impartial trial because of pretrial publicity." *See* N.C.G.S. § 15A-957 (1988).

A motion for change of venue based upon unfavorable publicity is addressed to the sound discretion of the trial judge, and will not be disturbed on appeal absent abuse of discretion. *State v. Corbett*, 307 N.C. 169, 177, 297 S.E.2d 553, 559 (1982). The burden is on the defendant to show that pretrial publicity precluded him from receiving a fair trial, and in meeting that burden he "must show that jurors have prior knowledge concerning the case, that he exhausted peremptory challenges and that a juror objectionable to the defendant sat on the jury." *State v. Jerrett*, 309 N.C. 239, 255, 307 S.E.2d 339, 348 (1983). We do not find in the record, nor does defendant argue in his brief, that these prerequisites

to finding defendant did not receive a fair trial have been met. We therefore find no abuse of discretion in the trial court's denial of defendant's motion for a change of venue.

## V

Defendant's final argument is that the trial court erred in failing to find mitigating factors in sentencing defendant. Defendant contends the trial court should have found as mitigating factors that defendant (A) committed the offense under a threat which was insufficient to rise to the level of a defense but which significantly reduced his culpability in the matter, N.C.G.S. § 15A-1340.4(a)(2)(b), and (B) that at an early stage of the criminal process, the defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer, N.C.G.S. § 15A-1340.4(a)(2)(l).

The burden of proving the existence of a mitigating factor is on the defendant. *State v. Canty*, 321 N.C. 520, 364 S.E.2d 410 (1988). It is error for the trial court to fail to find a mitigating factor which is uncontradicted, substantial, and where there is no reason to doubt its credibility. *State v. Daniel*, 319 N.C. 308, 354 S.E.2d 216 (1987).

## A

[5] In support of his position that he acted under threat, defendant argues that at various times he was surrounded by the victim's friends, that they were following him once they all went outside, and that he was, therefore, in a threatened position.

We reject this argument. The evidence indicates that defendant was the initial and only aggressor. There is no credible evidence that the victim or any of his friends ever threatened defendant. The evidence indicates instead that the victim's friends were afraid of defendant, not that they wanted to challenge him. Furthermore, once defendant reached his car in the parking lot, rather than leave he opened his trunk and took out a shotgun. When the shotgun broke, he returned to his car and obtained a handgun. We find no manifestly credible evidence to indicate defendant acted under threat.

## B

[6] In support of his argument that defendant voluntarily acknowledged wrongdoing, defendant refers to a statement made

by defendant to police during an interview in which defendant stated he was "sorry the man died. I wish I could change it."

Defendant's statement was made on 31 July 1989, several hours after the victim died. Defendant was arrested, however, on 29 July 1989. In order to be absolutely entitled to a finding of this mitigating factor, defendant must make his confession prior to the issuance of a warrant or information, prior to the return of a true bill of indictment or presentment, or prior to arrest, whichever comes first. *State v. Thompson*, 314 N.C. 618, 625, 336 S.E.2d 78, 82 (1985). If defendant does not establish he is absolutely entitled to a finding of this factor, it is for the trial judge to determine, in his discretion, whether the statement was made at a sufficiently early stage of the criminal process as to qualify as a mitigating factor. *Thompson* at 626, 336 S.E.2d at 82. Since defendant made his statement after his arrest, he is not absolutely entitled to a finding of this mitigating factor. Furthermore, we find no abuse of discretion by the trial court in failing to find this mitigating factor. Therefore, we find no error in the court's failure to find this factor as a mitigating factor.

No error.

Judges PARKER and COZORT concur.