STATE v. GISH

[111 N.C. App. 165 (1993)]

---

STATE OF NORTH CAROLINA v. JACOB CARLYLE GISH

No. 9127SC1131

(Filed 20 July 1993)

1. **Evidence and Witnesses § 1227 (NCI4th)— failure to follow Miranda procedure — statement inadmissible — subsequent statement not tainted**

Even though police officers failed to follow *Miranda* procedure by continuing to question defendant after he indicated his desire to cut off questioning and by encouraging him to "get it off [his] chest" and "help [him]self," and defendant's statement should have been excluded, defendant was nevertheless not entitled to a new trial, since his statement to police officers the next day was freely and voluntarily given in that defendant was returned to jail overnight, was warned of his rights the next day before questioning resumed, and waived those rights; the second statement was not tainted by the first; and no promises or threats were made to induce defendant to make either the first or second statement.

**Am Jur 2d, Evidence § 537; Trial §§ 723, 725.**

2. **Homicide § 300 (NCI4th)— second-degree murder — sufficiency of evidence**

The trial court did not err in failing to grant defendant's motion to dismiss the charge of second-degree murder where the evidence, including defendant's confession, tended to show that deceased was last seen alive when she left her home in her car with defendant; defendant and deceased argued because deceased wanted to end her relationship with defendant; they exchanged words and pushes, and defendant struck deceased; she fell and hit her head; defendant realized that

deceased was bleeding and her chest was not moving; defendant believed deceased was dead; and deceased's decomposed body was discovered six days later where she had fallen.

**Am Jur 2d, Homicide §§ 425 et seq.**

Appeal by defendant from judgments entered 17 May 1991 by Judge Hollis M. Owens, Jr., in Gaston County Superior Court. Heard in the Court of Appeals 2 February 1993.

Defendant was tried on proper bills of indictment charging him with the murder of his girlfriend, Anita Willard, and felonious failure to appear. Prior to trial, defendant moved to suppress certain statements which he made to law enforcement officers prior to his arrest for Ms. Willard's murder, but while he was in custody on an unrelated charge. The trial judge conducted a *voir dire* hearing and, after making oral and written findings of fact and conclusions of law, denied the motion to suppress.

The jury found defendant guilty of voluntary manslaughter and felonious failure to appear, and defendant was sentenced to an active term of imprisonment of twenty years for voluntary manslaughter and a consecutive three-year term for failure to appear. Defendant appealed.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General John R. Corne, for the State.*

*Assistant Public Defender Kellum Morris for defendant-appellant.*

MARTIN, Judge.

Defendant assigns error to the denial of his motions to (1) suppress evidence of the inculpatory statements which he made to law enforcement officers, and (2) dismiss the murder charges. For the reasons stated below, we conclude that defendant received a fair trial, free from prejudicial error.

[1] First, defendant contends the trial judge should have suppressed evidence of statements he made on 1 October 1989 and 2 October 1989 while in police custody because these statements were involuntary and obtained in violation of his state and federal constitutional rights. In *State v. Martin*, 97 N.C. App. 19, 387 S.E.2d 211 (1990), this Court summarized the established principles sur-

STATE v. GISH

[111 N.C. App. 165 (1993)]

rounding the admissibility of in-custody statements made by a person accused of a crime:

> We note [at] the outset that *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966), points out the rules governing the admissibility of in-custody statements made by an accused. These rules provide that an accused must be advised '(1) that he has a right to remain silent; (2) that anything he says can and will be used against him in court; (3) that he has a right to consult with a lawyer and to have a lawyer with him during interrogation; (4) that if he is an indigent a lawyer will be appointed to represent him; and (5) that if he at any time prior to or during questioning indicates that he wishes to stop answering questions or to consult with an attorney before speaking further, the interrogation must cease.' *State v. Riddick*, 291 N.C. 399, 408, 230 S.E.2d 506, 512 (1976). A statement will be rendered incompetent if involuntarily made. *Id.*

*Martin*, at 26-27, 387 S.E.2d at 215. Where law enforcement officers follow the procedural safeguards required by *Miranda*

> [T]he court must proceed to determine whether the statement made by the defendant was *in fact* voluntarily and understandingly made which is the ultimate test of the admissibility of a confession. In determining whether a defendant's statement was in fact voluntarily and understandingly made, the court must consider the *totality of the circumstances* of the case and may not rely upon any one circumstance standing alone and in isolation. (citation omitted.)

*State v. Corley*, 310 N.C. 40, 48, 311 S.E.2d 540, 545 (1984).

At the suppression hearing, the State offered the testimony of the two police officers who questioned defendant and recorded his statements on 1 October and 2 October 1989. Defendant also testified. The undisputed evidence indicates that on both occasions, prior to questioning, defendant was advised of and understood his constitutional rights, signed a waiver of rights form and proceeded to answer questions concerning the disappearance and death of Ms. Willard. The evidence is also clear that no promises or threats were made by the officers to defendant.

During the course of the first interrogation on 1 October 1989, defendant stated at one point, "I just don't want to talk about

it no more," but continued to answer when the detectives proceeded with additional questions. At a later point, the following exchange occurred:

> Gish: I think I just want to go back to jail.
>
> Anderson (detective): You think you want to go back to jail?
>
> Gish: So I can be by myself and think.
>
> Anderson: You don't want to go back up to the jail and lay in bed all night thinking about this. Get it off your chest now and tell us. It ain't going to be no easier tomorrow or next year. Every day you're going to have to live with this the rest of your life. Now is the time to tell it and get it over with, get a good night's sleep. West, you didn't kill her on purpose. You didn't do it. You have had a long time to sit in jail and think about it and it eat you alive. It's eating you alive right now. Smoke a cigarette and tell us what happened, get it off. I have more respect for you if you tell me the truth now. Was it an accident? Was it an accident, West? I can believe it. If it adds up, we know basically what happened. You are going to have to help yourself.

Following this exchange, defendant continued to talk with the officers and told them that he and Ms. Willard had had a fight behind the Burger King on the Bessemer City Road on the date of her disappearance, that he struck Ms. Willard a couple times, that she fell and hit her head on a curb and did not get up, that she was bleeding, and that he got scared and ran across the Interstate where he hitched a ride to Rockingham and stayed in a cabin there until the following Tuesday when he returned to Gastonia. On several occasions, he repeated that he wanted to cooperate and that he had "been wanting to get this over with." Following his statement, defendant was returned to jail, but told the officers that he would be willing to answer any other questions that might assist in their investigation.

On the following day, the detectives asked defendant if he would be willing to talk with them again about the case. Defendant agreed to do so without reluctance or hesitation. Defendant was once again advised of his *Miranda* rights and signed a waiver of rights form. Defendant then gave another statement to the officers in which he stated that on 6 May 1989, he and Ms. Willard drove to the dead-end of Raeford Road behind the Burger King in Willard's

green MG to talk. As they were standing around the outside of the car, they began to argue. Defendant stated that Ms. Willard told him that she did not want to see him anymore. They began to shout at each other, and defendant tried to get in the car. Ms. Willard then pushed him away and told him he would have to walk. Defendant stated that he pushed her back and she fell and hit her head. Ms. Willard jumped up and swung at him, and defendant hit her twice and she fell against the curb and did not get up again. Defendant then stated, "I kneeled down beside her and slapped her a couple times in the face and I was holding her hand at the same time and telling her to get up and there was no response and that's when I took off." Defendant also stated, "At the time when she fell I didn't know if she was dead. All that I know is that I didn't see no breathing." In this same statement, defendant also explained how he went to his mother's house and changed his bloody clothing prior to hitchhiking to the cabin in Rockingham where he threw the clothes in the river.

From this evidence, the trial court found that on both occasions defendant had been fully advised of his rights, that he appeared to understand those rights and indicated to the officers that he did in fact understand them, and that the officers made no offers of reward, or violence or threats to induce defendant to talk with them on either occasion. The trial court concluded that defendant had knowingly and understandingly waived his rights and that both defendant's statements to the officers had been made freely and voluntarily. The trial court also concluded that the officers made no promises, offers of reward, or threats or suggestions of violence to persuade or induce defendant to make a statement. These conclusions are fully reviewable on appeal. *State v. Pruitt*, 286 N.C. 442, 212 S.E.2d 92 (1975).

Defendant argues that his request to return to jail and think during the 1 October 1989 interrogation was an attempt to exercise his right, under *Miranda*, to cut off questioning. He contends that the detective, by persisting in the interrogation, did not "scrupulously honor" his exercise of the right, rendering the statement involuntary and obtained in violation of his constitutional rights. *See Michigan v. Mosley*, 423 U.S. 96, 46 L.Ed.2d 313 (1975).

Defendant's argument appears to have merit. The procedural safeguards announced by the Court in *Miranda* require that where a suspect in custody indicates at any time during interrogation

that he wishes to cut off questioning, the interrogation must cease. *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694 (1966); *Mosely, supra.* Here, the detectives continued to question defendant, encouraging him to "get it off [his] chest" and "help [him]self." Thus, it does not appear that the *Miranda* procedures were properly followed by the officers.

Assuming, however, that the 1 October statement should have been excluded due to the officers' violation of *Miranda* procedures, defendant is not entitled to a new trial. We must so hold because the trial court correctly found and concluded that the 2 October statement was freely and voluntarily given, and thus properly admissible in evidence. *See State v. Harris*, 333 N.C. 543, 428 S.E.2d 823 (1993).

Not every error entitles a defendant to a new trial. In order to entitle a defendant to a new trial, the error must have been prejudicial, i.e., there must have been "a reasonable possibility that, had the error not been committed, a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a); *State v. Turner*, 268 N.C. 225, 150 S.E.2d 406 (1966). Where the error arises in violation of a defendant's constitutional rights, however, the error is prejudicial "unless the appellate court finds that it was harmless beyond a reasonable doubt." N.C. Gen. Stat. § 15A-1443(b); *Chapman v. California*, 386 U.S. 18, 17 L.Ed.2d 705 (1967). The State has the burden of proving beyond a reasonable doubt that the error was harmless. *Id.* In our view, the State has met its burden in this case.

After defendant gave the 1 October statement, he was returned to jail over night. The next day, the officers returned to see him, again warning him of his rights and obtaining a waiver. They asked if he would agree to talk with them again, and he readily agreed to do so. On this occasion, defendant provided a detailed description of the events surrounding Ms. Willard's death. Defendant argues, however, that since the 1 October statement was obtained in violation of his rights, any subsequent statement is tainted and likewise inadmissible. We reject his argument.

It is well settled that "where a confession has been obtained under circumstances rendering it involuntary, a presumption arises which imputes the same prior influence to any subsequent confession, and this presumption must be overcome before the subsequent confession can be received in evidence." *State v. Silver*, 286 N.C.

709, 718, 213 S.E.2d 247, 253 (1975). However, in *State v. Siler*, 292 N.C. 543, 234 S.E.2d 733 (1977), the Supreme Court acknowledged that the presumption "which predates the *Miranda* decision arises out of a concern that where the first confession is procured through promises or threats rendering it involuntary as a matter of law, these influences may continue to operate on the free will of the defendant in subsequent confessions . . . [w]here no threats or promises were used to extract the first confession, as in this case, the reason for the rule giving rise to the presumption does not exist." *Id.* at 551-552, 234 S.E.2d at 739; *See State v. Greene*, 332 N.C. 565, 422 S.E.2d 730 (1992). As in *Siler* and *Greene*, the uncontradicted evidence shows that no promises or threats were made to induce defendant to make either the first or second statement and the trial court made findings to that effect. The 1 October statement was inadmissible solely as a result of the officers' failure to observe proper *Miranda* procedures.

The trial court's findings with respect to the 2 October statement clearly support its conclusion that defendant was aware of, and waived his rights under *Miranda* and that the statement was freely and voluntarily made. Since the same evidence was properly admitted, the admission of the 1 October statement could not have been prejudicial. Defendant's first assignment of error is overruled.

[2] Next, defendant contends the trial court erred in failing to grant his motion to dismiss the charge of second degree murder because the "State failed to offer sufficient evidence of the commission of a crime or of the [d]efendant being the perpetrator of said crime to send the homicide case to the [j]ury . . . ." We disagree.

When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Vause*, 328 N.C. 231, 400 S.E.2d 57 (1991). The function of the trial court is to determine whether the evidence, direct, circumstantial, or both, will permit a reasonable inference that defendant is guilty of the crimes charged. *Id.* In ruling on a motion to dismiss, the evidence is to be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *Id.*

At trial, the State sought to prove that defendant had committed murder in the second degree. "Second-degree murder is the unlawful killing of a human being with malice, but without premedita-

tion and deliberation." *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). Malice may be found if there is an intentional taking of the life of another without just cause, excuse or justification. *Id.* As distinguished, voluntary manslaughter, which is a lesser included offense of second degree murder, is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Fleming*, 296 N.C. 559, 251 S.E.2d 430 (1979).

The State presented evidence through the testimony of Ms. Willard's mother tending to show that defendant had become upset with Ms. Willard on 6 May 1989 because she had been paying more attention to her friends and to her new car, a green MG, than to him. The last time that Ms. Willard was seen alive was at approximately 3:00 p.m. on 6 May 1989 when she left her home in her car with defendant. Defendant acknowledged in his 2 October 1989 statement that he and Ms. Willard argued because Ms. Willard indicated she wanted to end her relationship with defendant. In the course of the argument, they got out of the car. Ms. Willard told defendant that she did not want to see him anymore. When defendant tried to get back into the car, Ms. Willard pushed him away saying that he would have to walk. Defendant then pushed Ms. Willard, and she fell to the ground. Ms. Willard got up, they exchanged words and defendant again pushed her causing her to fall to the ground hitting her head. She jumped up and swung at defendant. Defendant blocked the punch and struck Ms. Willard twice in the jaw. This time, Ms. Willard fell to the ground striking the curb. When she did not get up, defendant knelt beside her and slapped her face a couple of times, but she did not respond. Defendant noticed that her chest was not moving, and he got blood on his clothes. He believed she was dead and ran from the scene. Another witness testified that he had seen defendant riding alone in a green MG in Lincolnton, North Carolina six days after Ms. Willard's disappearance. On 10 June 1989, a decomposed body was discovered behind the Burger King on Bessemer City Road. The body was later determined to be that of Anita Willard.

From this evidence, the jury could reasonably infer that defendant killed Ms. Willard behind the Burger King on 6 May 1989. The trial court did not err in denying defendant's motions to dismiss the homicide charges.

Defendant received a fair trial, free from prejudicial error.

No error.

Judges JOHNSON and GREENE concur.