STATE OF NORTH CAROLINA v. LLOYD WALTER CHILDERS, JR.

No. COA97-1508

(Filed 1 December 1998)

### 1. Evidence— perceptions of lay witness—victim's state of mind

Testimony by a murder victim's co-worker about the demeanor of the victim in the days before she was shot by defendant, her ex-husband, including testimony that the victim "was upset" and "would hold her stomach crying," was relevant and admissible to show the victim's state of mind before the shooting. N.C.G.S. § 8C-1, Rule 701.

### 2. Evidence— hearsay—state of mind exception—victim's statements

Statements made by a murder victim to several witnesses shortly before she was shot by defendant wherein she stated that she was frightened of defendant and believed he was going to kill her were admissible to show the victim's state of mind and the nature of her relationship with defendant.

### 3. Homicide— second-degree murder—self-defense not shown—sufficiency of evidence

The evidence did not conclusively show that defendant acted in self-defense in shooting the victim so as to require the trial court to dismiss a charge of second-degree murder and lesser-included offenses where it tended to show that, even if the victim initially shot defendant in her house, defendant shot and killed the victim after she fled into the street, the threat of serious or bodily injury or death was no longer imminent, and defendant no longer had cause to protect himself; defendant stood over the victim's body and fired at her while she lay helpless in the road; and defendant shot the victim five times.

Appeal by defendant from judgment entered 23 January 1997 by Judge Russell G. Walker, Jr. in Richmond County Superior Court. Heard in the Court of Appeals 23 September 1998.

*Attorney General Michael F. Easley, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Sharpe & Buckner, by Benny S. Sharpe, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant Lloyd Walter Childers, Jr. appeals his conviction of second-degree murder in the fatal shooting of his ex-wife, Kathy Delane Bryant ("Bryant"). Primarily, defendant contends that the trial court erroneously admitted testimonial evidence revealing Bryant's fear of defendant. Defendant also challenges the sufficiency of the evidence supporting his conviction. Having carefully reviewed defendant's arguments, we find that the proceedings below were without error.

The State's evidence tended to show that on the morning of 23 November 1994, defendant went to Bryant's house in Rockingham, North Carolina, to visit his 13-year old daughter, Dana. Bryant was at work when defendant arrived, but she returned shortly after 12:00 noon. Upon Bryant's return, defendant instructed his daughter to go into her bedroom, close the door, and turn up the volume on her television set. Dana and her girlfriend, Melissa, who arrived shortly after Bryant returned, went into Dana's bedroom as instructed.

Minutes later, Dana and Melissa heard what sounded like three gunshots. Melissa ran home to call 911, and Dana ran out into the hallway. There, she saw her mother pointing a gun at defendant, who was sitting in the bathroom doorway, approximately six feet away from where Bryant was standing. Defendant was pleading, "Kathy, please don't do this." When Bryant became aware of Dana's presence, she told Dana to "get out of [t]here and call the law." Dana complied. According to Dana, defendant appeared to be wounded, but Bryant did not appear to be injured in any way.

Christopher McFadyn, a 13-year old boy who lived on Cedar Street approximately 50 yards from Bryant's home, testified that on the day of the shooting, he was standing on his back porch and heard what he believed to be a firecracker exploding. He walked around to the side of his house to see what was happening and heard another explosion. He looked toward the direction of the noise and saw Bryant lying face-down in the street in front of her house. Defendant was standing over Bryant's body, firing a gun at her. When defendant spotted Christopher, he ran to his car and drove away.

Dorothy Lee Martin, Bryant's next door neighbor, testified that she heard gunshots on 23 November 1994, but did not see any shots being fired. She stated that when she heard the gunfire, she looked out of her window and saw Bryant lying face-down in the road and

defendant standing approximately two feet away from Bryant's body. Martin further testified that when she turned from the window to dial 911, she heard three more shots.

Dr. John D. Butts, the Chief Medical Examiner for the State of North Carolina, performed the autopsy on Bryant's body. He testified that he found five gunshot wounds on the victim and that he recovered five .25 caliber bullets from her body. Three of the entry wounds were located on the upper left-hand side of Bryant's back, in the shoulder region. The bullets had traveled upward and across to the right-hand side of Bryant's body. One bullet had entered the left side of Bryant's face and had passed through to the other side, fracturing her right jaw. Another bullet wound was located at the front base of the victim's neck. This bullet traveled down through the center of the body—first damaging the aorta and the pulmonary artery, then passing through the heart and down into the abdominal cavity, then traveling through the spleen, and finally coming to rest in the tissues on the left side of the body, just under the skin. It was Dr. Butts' opinion that this wound caused Bryant's death.

Although Dr. Butts would not give an opinion as to the exact position of Bryant's body based only on the appearance of the wounds themselves, he responded to hypothetical questions concerning the likely positions of the shooter and the victim in view of the trajectory of the wounds. With regard to the wounds inflicted to Bryant's left cheek and shoulder, Dr. Butts stated that they were consistent with a shooter standing over her while she was lying flat on her chest with the right side of her face touching the pavement and her left cheek facing upward. As to the fatal shot to the base of Bryant's neck, Dr. Butts stated that this wound could have been inflicted by a shooter who was standing over Bryant while she was crouching or lying flat on the ground with her neck turned sideways and her left cheek up.

Dr. Butts also testified regarding what actions the victim would have been able to perform after sustaining the various wounds. He stated that of the five wounds, the neck wound was the only one that would have rapidly incapacitated Bryant. This wound, although not necessarily immediately incapacitating, would have prevented Bryant from engaging in any purposeful activity within a matter of seconds. Dr. Butts, however, stated that the victim could have traveled some feet before becoming completely disabled.

Officer Aprille Grant Sweatt, a crime scene specialist with the State Bureau of Investigations, responded to the call regarding the

shooting on 23 November 1994. Sweatt testified that she collected three spent .25 auto shell casings from the scene: Two were located on Hunt Street near the victim's body, and another was located on top of a heater in the living room. She did not find any .25 shell casings in the bathroom. Sweatt stated that with a semi-automatic weapon, the shell casing is ejected upward when the bullet is fired. She further testified that with a .38 Rossi revolver, such as the one found in the victim's hand, the shell casings remain in the chamber when the gun is fired. Sweatt reported that all five of the .38 Rossi's rounds had been fired, and the shell casings were left in the cylinder.

At the close of the State's evidence, defendant moved to dismiss the case as to second-degree murder and all lesser-included offenses. The trial court denied the motion, and defendant put on his evidence. Defendant testified that he went to the bathroom shortly after Bryant returned from work on 23 November 1994. When he opened the door to exit the bathroom, Bryant was pointing a .38 Rossi handgun at him, and before he could speak, she started shooting. One bullet struck defendant in the left side of his chest, near his heart, and another struck him in the right forearm. Defendant fell to the floor and, then, dragged himself back into the bathroom, behind a partition. He pulled a semi-automatic .25 caliber Beretta pistol out of his pocket and fired three shots at Bryant when she stepped into the bathroom. Defendant testified that Bryant ran from the house as soon as the shots were fired, but he stated that he did not know whether any of the shots had actually struck her. Defendant then got up and walked to the front door. When he stepped out on the stoop, Bryant shot at him again. Defendant stated that he did not see Bryant, but he fired back in the direction from which the shot came. He then professed that "[t]he next conscious moment . . . that [he had he] was standing in the BP Station [on Highway 74] and asking them to carry [him] to a doctor."

At the close of all of the evidence, defendant renewed his motion to dismiss. The trial court denied the motion and submitted the case to the jury on second-degree murder and all lesser-included offenses. In addition, the trial court instructed the jury on the theories of perfect and imperfect self-defense. The jury returned a verdict finding defendant guilty of second-degree murder. From the judgment entered on the jury's verdict, defendant appeals.

[1] With his first assignment of error, defendant contends that the trial court improperly admitted the opinion testimony of lay wit-

nesses without any prior foundation. Defendant specifically challenges the testimony of Bryant's co-worker, Doris Wilson, regarding Bryant's demeanor in the days preceding her death.

Rule 701 of the North Carolina Rules of Evidence governs the admissibility of opinion testimony by lay witnesses and provides as follows:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.R. Evid. 701. "The state of a person's health, the emotions [s]he displayed on a given occasion, or other aspects of [her] physical appearance are proper subjects for lay opinion." *Bowden v. Bell*, 116 N.C. App. 64, 71, 446 S.E.2d 816, 821 (1994). Moreover, a lay witness may testify using "shorthand statements of fact." *State v. Eason*, 336 N.C. 730, 747, 445 S.E.2d 917, 927 (1994). These are " 'instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time.' " *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975) (quoting *State v. Skeen*, 182 N.C. 844, 845, 109 S.E.2d 71, 72 (1921)).

In the case at hand, Wilson testified that in the days before the shooting, Bryant "act[ed] like she was trying to get away." Wilson stated that Bryant "was upset," that "[s]ometimes she would hold her stomach crying," and that "[h]er hands was all eat up because of her nerves." Defendant contends that while this testimony may have been rationally based on Wilson's perceptions, it was not helpful to a clear understanding of her testimony or to a determination of a fact in issue. We disagree, as Bryant's demeanor before the shooting was relevant to her state of mind. *See State v. Lynch*, 327 N.C. 210, 393 S.E.2d 811 (1990) (holding that victim's state of mind is relevant to show nature of relationship between victim and defendant before murder occurred). Wilson's statements were "helpful to a clear understanding of [her] testimony" regarding Bryant's mental state before the shooting. N.C.R. Evid. 701. Therefore, the statements were properly admitted under Rule 701, and defendant's first assignment of error is overruled.

[2] Defendant's next assignment of error is that the trial court wrongly permitted the State to introduce into evidence hearsay statements by Bryant concerning her fear of defendant. Defendant contends that the testimony of five of the State's witnesses—Doris Wilson, James Hooks, Dianne Brizendine, Kelly Hooks, and Dana Childers—was inadmissible in that it conveyed Bryant's statements that she believed defendant intended to harm her. Wilson, James Hooks, Brizendine, and Kelly Hooks each testified regarding conversations with Bryant shortly before the shooting, wherein she stated that she was frightened of defendant and that she believed he was going to kill her. Dana testified that her mother had purchased the .38 revolver to protect herself.

Defendant contends that the statements relayed by these witnesses were not properly admitted under Rule 804(b)(5) of the Rules of Evidence, because the trial court failed to conduct the six-part inquiry articulated in *State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986), for determining the admissibility of such hearsay statements. A review of the record, however, indicates that the trial court admitted these statements under the state of mind exception to the hearsay rule. In North Carolina, it is well established "that a murder victim's statements falling within the state of mind exception to the hearsay rule are highly relevant to show the status of the victim's relationship to the defendant." *State v. Alston*, 341 N.C. 198, 230, 461 S.E.2d 687, 704 (1995) (citing *State v. McHone*, 334 N.C. 627, 637, 435 S.E.2d 296, 301-02 (1993) (state of mind relevant to show a stormy relationship between victim and defendant prior to the murder), *cert. denied*, [511] U.S. [1046], 128 L.Ed.2d 220 (1994); *State v. Lynch*, 327 N.C. 210, 222, 393 S.E.2d 811, 818-819 (1990) (defendant's threats to victim shortly before the murder admissible to show victim's then-existing state of mind); *State v. Cummings*, 326 N.C. 298, 313, 389 S.E.2d 66, 74 (victim's statements regarding defendant's threats relevant to the issue of her relationship with defendant)). Therefore, we hold that the statements in question were properly admitted to show Bryant's state of mind and the nature of her relationship with defendant. Defendant's assignment of error, then, fails.

[3] Defendant next assigns error to the trial court's denial of his motion to dismiss the charge of second-degree murder and all lesser-included offenses at the close of all of the evidence and upon his motion for appropriate relief. Defendant argues that the evidence in the record conclusively shows that the victim, Bryant, was the aggressor in this incident and that defendant was acting to protect his life.

The law governing the manner by which a trial court must evaluate a motion to dismiss a criminal offense is well-defined.

> "The question for the court in ruling upon defendant's motion for dismissal is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If substantial evidence of both of the above has been presented at trial, the motion is properly denied. . . . In considering a motion to dismiss, the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. . . . Contradictions and discrepancies in the evidence are strictly for the jury to decide."

*State v. Huggins*, 71 N.C. App. 63, 66, 321 S.E.2d 584, 586 (1984) (quoting *State v. Lowery*, 309 N.C. 763, 309 S.E.2d 232 (1983) (citations omitted)). Substantial evidence is that amount of evidence necessary for a rational trier of fact to conclude beyond a reasonable doubt that a particular element exists. *State v. Cofield*, 129 N.C. App. 268, 280, 498 S.E.2d 823, 832 (1998).

"Second-degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). Malice is present where the defendant intentionally takes the life of another without excuse, just cause, or justification. *State v. Gish*, 111 N.C. App. 165, 431 S.E.2d 856 (1993). A killing is intentional where the defendant commits an assault against the victim " 'which in itself amounts to a felony *or* is likely to cause death or serious bodily injury.' " *State v. Piche*, 102 N.C. App. 630, 636, 403 S.E.2d 559, 563 (1991) (quoting *State v. Ray*, 299 N.C. 151, 158, 261 S.E.2d 789, 794 (1980)).

Under the law of perfect self-defense, however, a killing is completely excused if four elements are met:

> "(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and (3) defendant was not the aggressor in bringing on the affray, . . . and (4) defendant did not use excessive force . . . ."

*State v. Wilson*, 304 N.C. 689, 694-95, 285 S.E.2d 804, 807 (1982) (quoting *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981)), *quoted in State v. Hayes*, 130 N.C. App. 154, 178-79, 502 S.E.2d 853, 870 (1998). Nevertheless, where elements (1) and (2) are satisfied, but elements (3) and (4) are lacking, the killing is not completely excused, and the defendant has at least committed voluntary manslaughter. *Id.* Such a set of circumstances constitutes imperfect self-defense. *Id.*

In the instant case, the evidence, taken in the light most favorable to the State and allowing the State every reasonable inference and intendment arising therefrom, tends to show that after the initial confrontation had ended, defendant followed Bryant out into the street and killed her. The evidence further tends to show that defendant stood over Bryant's body and fired at her while she lay helpless in the road. The autopsy revealed that Bryant was shot five times: three times in the upper left shoulder, once in the left cheek, and once in the base of her neck. According to the testimony of the medical examiner, Dr. Butts, all of these wounds could have been inflicted by defendant while he was standing over Bryant's fallen body. It is unclear from the evidence at what point during the affray the fatal injury was administered by defendant. However, the absence of spent .25 shell casings in the bathroom supports a conclusion that the events following Bryant's initial shooting of defendant did not unfold as defendant testified. In light of this evidence, a reasonable juror could find beyond a reasonable doubt that defendant shot and killed Bryant after she had fled and, thus, after the threat of serious bodily injury or death was no longer imminent and defendant no longer had cause to protect himself. Therefore, the trial court correctly denied defendant's motion to dismiss the charge of second-degree murder and all lesser-included offenses at the close of all the evidence, and the case was properly submitted to the jury.

By his final assignment of error, defendant contends that the trial court erred in denying his motion to set aside the jury's verdict, because the evidence at trial did not warrant a conviction of second-degree murder.

"The decision to grant or deny a motion to set aside the verdict is within the sound discretion of the trial court and is not reviewable absent a showing of an abuse of that discretion." *State v. Serzan*, 119 N.C. App. 557, 561-62, 459 S.E.2d 297, 301 (1995). When the evidence presented at trial adequately supports the jury's verdict, the trial

court does not abuse its discretion in denying the motion to set aside the verdict. *Id.* Having held that the evidence presented in this case was sufficient to support a conviction of second-degree murder, we likewise conclude that the trial court did not abuse its discretion in denying defendant's motion to set aside the jury's verdict.

Based upon all of the foregoing, we hold that defendant received a fair, trial free from prejudicial error.

No error.

Judges MARTIN, John C. and HORTON concur.