STATE OF NORTH CAROLINA v. MICHAEL LEONARD LUNDY AND
RONALD LEE EVANS, DEFENDANTS

No. COA98-1257

(Filed 21 September 1999)

## 1. Criminal Law— motion to join granted—no error

The trial court did not abuse its discretion in a second-degree murder case by allowing the State's motion to join the two defendants for trial because the State came forward with the evidence necessary to establish the guilt of both defendants, neither defendant put on a defense, and there is nothing in the record to suggest this course of action was forced on either defendant as a result of a position or strategy taken by the other defendant.

## 2. Homicide— second-degree murder—acting in concert—common plan—sufficient evidence

The trial court did not err by denying defendants' motion to dismiss the second-degree murder charge based on the theory of acting in concert because the evidence viewed in the light most favorable to the State reveals that defendants engaged in a common plan to shoot the victim relating to their joint enterprise of selling crack cocaine.

## 3. Constitutional Law— speedy trial—second-degree murder—no violation

The trial court did not err in denying defendant Evans' motion to dismiss the second-degree murder charge based on lack of a speedy trial even though his trial was over three and one-half years from the date of his arrest because: (1) the delay was not the result of prosecutorial willfulness or neglect; (2) defendant did not assert his right to a speedy trial until more than three years after his arrest, which does not foreclose his right but does weigh against him; and (3) defendant has not shown that he was prejudiced by the delay, especially given the several other criminal charges he incurred since his arrest.

## 4. Evidence— drug dealing activities—not bad character—motive

The trial court did not err in a second-degree murder case by admitting evidence regarding defendant Evans' drug dealing activities because it was relevant to show his motive for murdering the victim instead of merely to show his bad character.

**5. Criminal Law— requested jury instructions denied—verbatim not required—jury could reasonably infer**

The trial court did not err in a second-degree murder case by failing to give defendant Evans' requested jury instruction regarding "mere presence" as it relates to acting in concert because the trial court is not required to give the requested instruction verbatim and the jury could reasonably infer from the trial court's instructions that more than "mere presence" was necessary.

Appeal by defendants from judgments entered 19 September 1997 by Judge J.B. Allen, Jr. in Wake County Superior Court. Heard in the Court of Appeals 24 August 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*John F. Oats, Jr. for defendant-appellant Michael Leonard Lundy.*

*Karl E. Knudsen for defendant-appellant Ronald Lee Evans.*

TIMMONS-GOODSON, Judge.

Defendants Michael Leonard Lundy and Ronald Lee Evans appeal from their convictions of second-degree murder in the shooting death of Richard Palmer Evans. Having carefully examined defendants' assignments of error, we conclude that the trial court committed no error.

On 22 January 1994, defendant Evans was arrested and charged with the murder of Richard Palmer Evans ("the victim"), which occurred on the previous evening. Defendant Lundy was also arrested, and he was charged with being an accessory after the fact to the victim's murder. On 21 March 1994, the grand jury returned a true bill of indictment against defendant Lundy on the accessory charge and, on 4 April 1994, indicted defendant Evans for murder. Subsequently, on 24 June 1997, the grand jury also indicted defendant Lundy for the victim's murder.

On 8 May 1997, defendant Evans moved to dismiss the charge against him on the ground that he was denied the right to a speedy trial. The trial court conducted a hearing on the motion and entered an order on 21 August 1997 denying the motion after concluding that there had been no infringement on defendant Evan's right to a speedy trial. The cases against both defendants came on for trial at the 15

September 1997 Criminal Session of Wake County Superior Court, and the State moved to join the offenses against defendant Lundy and to join the cases against both defendants for trial. Although defendants objected to having their charges joined for trial, the judge allowed both motions for joinder.

The evidence presented by the State at trial tended to show the following facts: Defendant Lundy, defendant Evans, and Carl Carlisle were friends and "business associates" from Virginia who came to North Carolina in January of 1994 to sell crack cocaine. Carlisle testified that he and defendant Evans sold drugs out of a location in Walnut Terrace and that defendant Lundy sold drugs out of the victim's home, which was located at 906 South East Street in Raleigh. In return for the use of the victim's home, defendant Lundy agreed to split the sale proceeds with the victim 80/20.

On the night of 21 January 1994, Carlisle drove to the victim's house, where he found defendants Lundy and Evans waiting outside. Defendants approached the vehicle, and in view of both Carlisle and defendant Lundy, defendant Evans reached under the passenger's seat and retrieved a gun belonging to him and defendant Lundy. With the gun tucked in the waistband of defendant Evan's clothing, defendants proceeded to the door of the victim's house. Carlisle parked the car and reached the front porch just as defendant Evans was knocking on the door. When the victim came to the door, defendants confronted him about a $500 shortage in the proceeds from his sale of the drugs. The victim stated that he was dissatisfied with the fee arrangement and wanted to change the split to 60/40. Defendants and the victim argued about the matter for approximately twenty minutes before Carlisle said, "Let's go." As he and defendant Lundy were turning to leave, defendant Evans fired the gun, killing the victim. Defendants and Carlisle fled the scene and drove to a house in Walnut Terrace. Defendants traded clothing, and defendant Lundy disposed of the gun by throwing it into a sewer.

The State also presented the testimony of several witnesses who corroborated Carlisle's account of the events. Cerranz Harrison testified that he was in the victim's house at the time of the shooting and that although he did not see who was on the porch, he recognized the voice of one of the men arguing with the victim as that of defendant Evans. In addition, Arthur Bernard Clinding stated that he too had sold drugs with defendant Evans and that on the night of the murder, defendant Evans told him that he had shot someone. Lastly, the victim's brother, Robert, testified that on the night of the shooting,

defendants Lundy and Evans had been outside on the porch arguing with the victim for approximately fifteen minutes when he saw the flash of a gun firing. He stated, however, that he did not see who did the shooting.

At the close of the State's evidence, defendants moved to dismiss the charges against them, and the trial court denied the motions. Neither defendant presented any evidence in his defense, and the court instructed the jury on the theory of acting in concert. The jury returned guilty verdicts against both defendants on the charge of second-degree murder and found defendant Lundy not guilty of being an accessory after the fact. The trial court found that the factors in aggravation outweighed the factors in mitigation and sentenced each defendant to a term of 45 years imprisonment. Defendants appeal.

## DEFENDANT LUNDY

[1] Defendant Lundy's first assignment of error is that the trial judge improvidently allowed the State's motion to join the cases against him and defendant Evans for trial. Defendant Lundy contends that he was denied his constitutional right to a fair trial by reason of this ruling. We must disagree.

The trial judge may properly join for trial charges against multiple defendants when, as in the present case, "the offenses charged are 'part of the same act or transaction' or are 'so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.' " *State v. Fink*, 92 N.C. App. 523, 527, 375 S.E.2d 303, 306 (1989) (quoting N.C. Gen. Stat. § 15A-926(b)(2) (1988)). The judge may likewise join defendants for trial when their offenses "[are] part of a common scheme or plan." N.C.G.S. § 15A-926(b)(2). However, joinder of multiple defendants is improper if it will impair any one defendant's right to a fair determination of his guilt or innocence. N.C. Gen. Stat. § 15A-927(c)(2) (1997). In the end, the decision whether to try multiple defendants jointly is within the solid discretion of the trial judge and will not be overturned on appeal absent manifest abuse of that discretion. *State v. Pendergrass*, 111 N.C. App. 310, 315, 432 S.E.2d 403, 406 (1993). "The test for determining whether a trial judge abused his discretion in joining defendants for trial is 'whether the conflicts in the defendants' respective positions at trial [are] of such a nature that, considering all of the evidence in the case, defendant was denied a fair trial.' " *Fink*, 92 N.C. App. at 528, 375 S.E.2d at 306 (quoting *State v. Green*, 321 N.C. 594, 601, 365 S.E.2d 587, 591 (1988)).

**STATE v. LUNDY**

[135 N.C. App. 13 (1999)]

We are satisfied that consolidating the present defendants' charges for trial did not result in any unfair prejudice to defendant Lundy. Here, neither defendant put on a defense, and there is nothing in the record to suggest that this course of action was forced on either defendant as a result of a position or strategy taken by the other defendant. Indeed, given the lack of evidence offered by either defendant, we are unable to discern any conflict in their respective positions that would have denied them a fair determination of their guilt or innocence. We note that "[t]his is not a case where the [S]tate simply stood by and relied on the testimony of the respective defendants to convict them." *State v. Lowery*, 318 N.C. 54, 60, 347 S.E.2d 729, 734-35 (1986). Instead, the State, not defendants, came forward with the evidence necessary to establish the guilt of both defendants. Accordingly, we conclude that the joint trial of defendants did not deprive defendant Lundy of a fair trial.

**[2]** Defendant Lundy next assigns error to the denial of his motion to dismiss the charge of second-degree murder based on the theory that he was acting in concert with defendant Evans and was, therefore, equally responsible for the victim's murder. It is defendant Lundy's contention that because the evidence tends to show that the shooter acted spontaneously without any encouragement or assistance, the State's evidence was insufficient as a matter of law to show that defendants acted in concert. Again, we disagree.

The law is well settled regarding a trial judge's evaluation of a motion to dismiss a criminal offense.

"The question for the court in ruling upon defendant's motion for dismissal is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If substantial evidence of both of the above has been presented at trial, the motion is properly denied. . . . In considering a motion to dismiss, the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom.

. . . Contradictions and discrepancies in the evidence are strictly for the jury to decide."

*State v. Huggins*, 71 N.C. App. 63, 66, 321 S.E.2d 584, 586 (1984) (quoting *State v. Lowery*, 309 N.C. 763, 309 S.E.2d 232 (1998) (cita-

tions omitted)), *quoted in State v. Childers*, 131 N.C. App. 465, 471, 508 S.E.2d 323, 328 (1998). Substantial evidence, such as that necessary to support a conviction, is that amount of evidence that a rational trier of fact would accept as adequate to find that a particular element exists beyond a reasonable doubt. *Id.*

Defendant Lundy was charged with second-degree murder under the theory that he acted with defendant Evans in taking the life of the victim. "Second-degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). Malice exists when "the defendant intentionally takes the life of another without excuse, just cause, or justification." *Childers*, 131 N.C. App. at 471, 508 S.E.2d at 328. "A defendant acts in concert with another to commit a crime when he acts in harmony or in conjunction with another pursuant to a common criminal plan or purpose." *State v. Moore*, 87 N.C. App. 156, 159, 360 S.E.2d 293, 295 (1987). To be convicted of a crime under the theory of acting in concert, the defendant need not do any particular act constituting some part of the crime. *Id.* All that is necessary is that the defendant be "present at the scene of the crime" and that he "act[] together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *Id.* at 159, 360 S.E.2d at 295-96.

Applying the foregoing principles to the evidence in the instant case, we find no error in the trial court's denial of defendant's motion to dismiss. Viewed in the light most favorable to the State, the evidence presented and the inferences logically drawn therefrom show that defendants Lundy and Evans engaged in a common plan to shoot the victim. Both defendants traveled from Virginia to North Carolina pursuant to a joint enterprise to sell crack cocaine. Defendant Lundy recruited the victim to sell drugs out of his home and offered him an 80/20 split of the sale proceeds. The victim, apparently dissatisfied with the fee arrangement, came up $500.00 short on the drug transactions. With defendant Lundy's full knowledge, defendant Evans retrieved a gun belonging to both defendants, and the two returned to the victim's house to confront him about the shortage. An argument erupted between defendants and the victim that lasted approximately twenty minutes. Just as defendant Lundy was turning to leave, defendant Evans pulled out the gun and shot the victim. After fleeing the scene, defendants traded clothing to alter their appearances and defendant Lundy disposed of the gun by throwing it into a sewer.

The cumulative effective of this evidence demonstrates that the trial judge correctly denied defendant Lundy's motion to dismiss, as there was an abundance of evidence to show that he acted in concert with defendant Evans. Therefore, defendant Lundy's assignment of error fails.

## DEFENDANT EVANS

[3] Like defendant Lundy, defendant Evans argues that the trial judge erred in consolidating both defendants' cases for trial and in submitting the charge of second-degree murder to the jury on the theory that defendants acted in concert. For the reasons given in our discussion of these issues as they relate to defendant Lundy, we reject defendant Evans' arguments as unpersuasive. We turn then to his argument that the court committed reversible error in denying his motion to dismiss for lack of a speedy trial. Defendant Evans contends that he suffered undue prejudice as a result of the delay of three and one-half years in bringing his case to trial. On the record before us, we must disagree.

The Supreme Court of the United States has articulated a balancing test to determine whether a criminal defendant has been denied his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution. In applying the test, the court must consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) whether the defendant has been prejudiced by the delay. *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101 (1972). The issue of whether a transgression of a defendant's right to a speedy trial has occurred is not resolved by any one factor; "rather, the factors must be examined as a whole, 'with such other circumstances as may be relevant.' " *State v. Johnson*, 124 N.C. App. 462, 466, 478 S.E.2d 16, 19 (1996) (quoting *Barker*, 407 U.S. at 533, 33 L. Ed. 2d at 118), *cert. denied*, 345 N.C. 758, 485 S.E.2d 304 (1997). "The test under the speedy trial provision of Article 1, § 18 of the North Carolina Constitution is identical." *Id.*

The first factor, the length of the delay, is essentially a triggering device, as it does not determine whether a constitutional violation has occurred, but may, if the delay is substantial, trigger the *Barker* inquiry. *Id.* In the case under review, defendant's trial did not commence until 1332 days, or 44 months, or over three and one-half years from the date of his arrest. It is our judgment that this delay merits examination of the other three factors. *See State v. Chaplin*, 122 N.C.

App. 659, 471 S.E.2d 653 (1996) (delay of three years enough to trigger inquiry into remaining factors).

As to the reason for the delay, defendant bears the burden of proving that the delay was brought about by neglect or willfulness on the part of the prosecution. *State v. Jacobs*, 128 N.C. App. 559, 568, 495 S.E.2d 757, 763, *disc. review denied*, 348 N.C. 506, 510 S.E.2d 665 (1998). Here, defendant Evans has not met that burden. The record indicates that shortly after his indictment, defendant Evans was bonded out of jail and remained free on bond until this case came to trial. In June of 1994, defendant Evans waived arraignment and entered a plea of not guilty. In the fall of 1994, the prosecutor learned that defendant Evans had been arrested and charged with murder in the State of Virginia. The prosecutor contacted the authorities in Virginia and was advised that it would take anywhere from six to eight months to dispose of the murder charge. Several months later, the prosecutor again contacted the authorities in Virginia and was told that defendant Evans was still in custody there and that it would be several more months before the case was resolved. When the prosecutor again contacted the Virginia authorities in the fall of 1995, he was advised that defendant Evans had been placed on probation pursuant to a plea arrangement.

Mindful of his own congested trial schedule as well as that of defendant Evans' attorney, the prosecutor did not schedule this matter for trial until the week of 23 September 1996. Defendant Evan's counsel, however, moved for a continuance alleging that he needed more time to prepare for trial. The prosecutor attempted to reset the case for October of 1996 but decided against it after a conversation with defendant Evan's counsel who desired to provide the State with exculpatory evidence. In November of 1996, the prosecutor was elected to the position of District Court Judge, and in December of 1996, he was sworn into office. Thereafter, the matter had to be reassigned to another prosecutor and was brought to trial in the fall of 1997. In light of these facts, we are persuaded that the delay was not the result of prosecutorial willfulness or neglect.

Regarding the third factor, we note that defendant Evans first asserted his right to a speedy trial in a motion filed 7 May 1997, more than three years after his arrest. While, "[d]efendant's failure to assert his right to a speedy trial sooner in the process does not foreclose his speedy trial claim, [it] does weigh against his contention that he has been denied his constitutional right to a speedy trial." *State v.*

*Flowers,* 347 N.C. 1, 28, 489 S.E.2d 391, 407 (1997), *cert. denied,* 522 U.S. 1135, 140 L. Ed. 2d 150 (1998).

With regard to the issue of prejudice, we recognize that the objectives of the right to a speedy trial are: " '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " *State v. Webster,* 337 N.C. 674, 681, 447 S.E.2d 349, 352 (1994) (quoting *Barker,* 407 U.S. at 532, 33 L. Ed. 2d at 118). The most serious of these aims is the last, "because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Id.* (quoting Barker, 407 U.S. at 532, 33 L. Ed. 2d at 118).

Defendant Evans has not shown that he was prejudiced by the delay. Although he testified that he had to return to the State of North Carolina at least 10 times to appear in court regarding this matter, the trial judge found, and we agree that defendant Evans' personal life was not unfairly affected by the delay, especially given the several other criminal charges he incurred since January of 1994. As to defendant Evans' claim that the delay caused the memories of Robert Evans, the victim's brother, and Cerranz Harrison to fade, we can find no prejudice. First, we note that defendant Evans has failed to show how Harrison's faded memory negatively impacted his defense. Secondly, the record reveals that the testimony of Robert Evans at trial tended to implicate defendant Lundy as the shooter and to suggest that defendant Evans was turning to leave when the shot was fired. As our Supreme Court stated in *State v. Dietz,* 289 N.C. 488, 223 S.E.2d 357 (1976), "[h]ardly a criminal case exists where the defendant could not make these general averments of impaired memory and lost witnesses." *Id.* at 493, 223 S.E.2d at 361. Therefore, defendant Evans' argument is unpersuasive.

Balancing the *Barker* factors, we hold that defendant Evans was not denied his constitutional right to a speedy trial, and the trial court did not err in denying his motion to dismiss.

[4] Defendant Evans also assigns error to the admission of evidence regarding his drug dealing activities. He argues that this evidence was impermissible character evidence under Rule 404(b) of the North Carolina Rules of Evidence. We cannot agree.

Rule 404(b) of the Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character

of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive." N.C. Gen. Stat. § 8C-1, Rule 404(b) (Cum. Supp. 1998). Our Supreme Court has reiterated that Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring exclusion if its *only* probative value is to show . . . defendant has the propensity . . . to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

On the facts of the case *sub judice*, we agree with the State's position that the evidence of defendant Evans' drug dealing activities was relevant to show his motive for murdering the victim. The transcript of the evidence reveals that the State's theory at trial was that defendants Evans and Lundy murdered the victim over a fee dispute regarding drug transactions the victim conducted for defendant Lundy. The State's evidence tended to show that the victim wanted a 60/40, rather than an 80/20 split of the sale proceeds and that he had come up $500 short when it was time to pay defendant Lundy for the merchandise sold. The argument resulting in the victim's death occurred when defendants Lundy and Evans confronted the victim about the issue of his fee for selling the drugs, and given that the murder was inextricably tied to the drug activities of both defendants, we hold that evidence of the same was relevant to establish motive for the killing. *See State v. King*, 343 N.C. 29, 468 S.E.2d 232 (1996) (testimony regarding defendant's drug dealings properly admitted under Rule 404(b) to show motive where State contended that victim was killed for stealing cocaine from one of defendant's "lieutenants"). Thus, defendant Evans' assignment of error is overruled.

**[5]** With his next assignment of error, defendant Evans contends that the court erred in failing to give his requested instruction regarding "mere presence" as it relates to concerted action. During the charge conference and again after the jury requested clarification of "acting in concert," defendant submitted a request for the following instruction: "[M]ere presence at the scene of the crime alone is not sufficient to establish acting in concert. To find the defendant guilty of acting in concert, the State must prove beyond a reasonable doubt that the defendant in fact shared in a common purpose to commit a crime." We agree with defendant Evans that this is a correct statement of the law. *See State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E.2d 572, 586 (1971), *death sentence vacated*, 408 U.S. 939, 33 L. Ed. 2d 761 (1972) (court correctly charged jury that "mere presence of a person at the

scene of a crime at the time of its commission does not make him guilty of the offense, but that if two persons are acting together, in pursuance of a common plan and common purpose . . . and one of them actually does the [crime], both would be guilty within the meaning of the law"). However, we conclude that the trial court properly instructed the jury regarding "acting in concert," and its failure to give the requested instruction verbatim was not error.

"[I]t is well established that a request for a specific instruction which is correct in law and supported by the evidence must be granted at least in substance." *State v. Williams,* 98 N.C. App. 68, 71, 389 S.E.2d 830, 832 (1990). This notwithstanding, "the trial judge is not required to give the requested instruction verbatim." *Id.*

In the present case, the trial judge gave the following charge regarding concerted action:

> Again, I instruct you that for a person to be guilty of a crime it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons join in a purpose to commit a crime, each of them if actually or constructively present is not only guilty of that crime of second degree murder if the other commits the crime, but he is also guilty of any other crime committed by the other in the pursuance of a common purpose to commit second degree murder or as a natural and probable consequence therefore [sic].

> So I charge you, ladies and gentlemen, if you find from the evidence beyond a reasonable doubt that on or about the alleged date, January 21, 1994, the defendant Ronald Lee Evans acting either by himself or acting together with Michael Leonard Lundy, intentionally and with malice killed the victim Richard Palmer Evans with a deadly weapon, it would be your duty to return a verdict of guilty of second degree murder.

From these instructions, the jury could reasonably infer that more than "mere presence" was necessary to find that defendant Evans acted in concert with defendant Lundy. The trial judge made it abundantly clear that to convict defendant Evans of second-degree murder under the theory that he "acted in concert" with defendant Lundy, the jury had to find beyond a reasonable doubt that defendant Evans joined in or shared a common plan with defendant Lundy to commit the offense. We, therefore, hold that the trial court's instruction on the doctrine of "acting in concert" was without legal error.

Furthermore, we have examined defendant Evans' contention that the court erred in failing to require the jury to complete a special verdict sheet designating the theory under which he was convicted and find it to be without merit.

In sum, our review of the record reveals that defendants Lundy and Evans received a fair trial, free from prejudicial error.

NO ERROR.

Judges GREENE and HORTON concur.