STATE OF NORTH CAROLINA v. JOSHUA DWAYNE FOWLER

No. COA02-730

(Filed 5 August 2003)

**1. Evidence— demonstration by detective—strangling—admissible**

A demonstration by a detective as to how an apron string used to strangle a murder victim was wrapped and tied around the victim's neck was admissible where the demonstration was relevant to premeditation and deliberation and the State provided a proper foundation in that the detective testified to his familiarity with the autopsy photos and the apron string used for the strangling. The demonstration was not required to be excluded as prejudicial because it was brief and unemotional, not speculative, and the court sustained questions to the detective that were more properly within the jury's sphere.

**2. Criminal Law— instructions—confession—Pattern Jury Instruction**

There was no plain error in a first-degree murder prosecution in the court's instruction that there was evidence tending

to show that defendant had confessed to the crime charged. Although the defense argument was that defendant had confessed to killing the victim rather than to premeditating the killing, a detective testified that defendant had admitted choking the victim with her apron string because he was angry with her and tired of her "junk." The Pattern Jury Instruction "tending to show" language does not constitute an impermissible expression of opinion.

**3. Criminal Law— requested instructions on motive—Pattern Jury Instruction given**

The trial court did not err in a first-degree murder prosecution by denying defendant's request for special instructions on lack of motive. The court gave the Pattern Jury Instruction on motive, but defendant argued that the instruction suggested that the absence of motive was relevant only to consideration of innocence of all charges, not to whether he was guilty of second-degree murder.

**4. Criminal Law— instructions—differences between requested and given instruction—harmless**

Any error in a first-degree murder prosecution in the court's instructions on peacefulness was harmless. Defendant requested that the jury be instructed on nonviolence and peacefulness, but the court instructed only on peacefulness; peacefulness and nonviolence are almost synonymous. Furthermore, there is no significant difference in the given instruction on the likelihood of a peaceful person committing first-degree murder and the requested instruction on the likelihood of a peaceful person committing the alleged offense.

**5. Criminal Law— instruction—reputation—evidence of general good reputation—not sufficient**

There was no error in a first-degree murder prosecution in the court's instruction on reputation evidence. Although defendant argued that evidence of his general good reputation should be considered, under our current rules of evidence the accused may only introduce evidence of pertinent character traits.

**6. Criminal Law— requested instruction—defendant as law abiding—lack of criminal record—instruction not given**

A first-degree murder defendant was not entitled to an instruction on being law abiding where the record suggests

that defendant's lack of a criminal record resulted from not being caught.

**7. Criminal Law— instruction—requested—given**

There was no error in a first-degree murder prosecution where defendant contended that the court did not give an instruction on how to consider demonstrative evidence, but the court gave the instruction.

**8. Homicide— short form indictment—murder**

Use of the short form murder indictment was not error.

Appeal by defendant from judgment entered 31 January 2002 by Judge E. Lynn Johnson in Columbus County Superior Court. Heard in the Court of Appeals 12 May 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas J. Pitman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliott Walker, for the defendant.*

LEVINSON, Judge.

Defendant (Joshua Fowler) appeals his conviction of first degree murder. We conclude the defendant had a fair trial, free from prejudicial error.

Most of the relevant facts are not in dispute. Defendant and Stacey Jones were high school classmates and began dating in early 2001. Stacey was a strong, athletic girl who was a cheerleader at school, lifted weights, and held a part-time waitress job which required her to lift heavy trays. On 12 April 2001, Stacey and defendant attended their school prom together; shortly before the prom, Stacey's car was cleaned and waxed by her parents and Stacey gave herself a manicure. On the afternoon of 17 April 2001, Stacey dropped by defendant's house before her shift at the restaurant. After eating lunch, she and defendant left his house together, with defendant driving her car. They drove to several nearby places, then parked along a secluded dirt road frequented by local teenagers. While stopped at the side of the road, defendant and Stacey argued about their relationship. The dispute included profanity and some scuffling. At some point, defendant choked Stacey to death with a waitress apron from the back seat of her car. Defendant put her body into the trunk of the

STATE v. FOWLER

[159 N.C. App. 504 (2003)]

car and drove away. He eventually abandoned the car about a half mile from his house and walked home.

Meanwhile, Stacey's parents, who expected her home from the restaurant by midnight, became upset when she failed to return by 2:00 a.m. Lucy Jones, Stacey's mother, testified that she called the defendant's house several times over the following twelve hours, but that defendant claimed to know nothing about Stacey's whereabouts, saying only that "he hoped nothing bad had happened to her." While Ms. Jones waited by the phone, Stacey's father drove nearby rural roads, trying to find his daughter. At about 2:00 p.m. the next day, 18 April 2001, defendant's mother spotted Stacey's car where the defendant left it, and called local law enforcement agencies. Detective Gregg Cole of the Columbus County Sheriff's Department was dispatched to the car's location, along with Detective H.H. Coffman. When they discovered Stacey's body in the trunk, the law enforcement officers went to defendant's house.

Upon arriving at defendant's house, the law enforcement officers informed the defendant of his *Miranda* rights. Defendant then admitted that he killed Stacey by choking her and offered to show them where the killing occurred. Defendant rode with Detective Coffman. At trial, Coffman testified that during the drive defendant told him that on 17 April 2001 he and Stacey argued about the fact that she was pregnant, and that he had been impatient with "her constant bickering and arguing." Defendant also told Coffman he first strangled Stacey with his hands by accident, but then removed his hands; however, when Stacey renewed the argument, defendant "was mad and tired of her junk," and so he "took a thick string and wrapped it around her throat and pulled it tight . . . until she died."

SBI Agent Oaks, who examined the crime scene, testified that Stacy's car was clean and her nails were not broken. Her body was found face down in the trunk, with an apron string wrapped twice around her neck. The 'skirt' part of the apron had been torn from the string, and was found separately inside the trunk. When Stacey's body was discovered, the string was tied in two double knots located on the right side of her neck. Strands of her hair and bits of pine straw were caught up in the knots. Dr. John Butts, North Carolina Chief Medical Examiner, offered his expert opinion that Stacey died from strangulation with the apron string. She also had several bruises and abrasions on her upper body and head, including a bruise on the right side of her face which in Dr. Butts' opinion had been caused by "blunt force trauma." Butts testified that the overall pattern of bruising on

Stacey's neck was consistent with an individual choking her from behind, by pulling on the apron string wrapped around her neck. Dr. Butts testified further that at the time she was killed Stacey was in the early stages of pregnancy.

Defendant's trial testimony confirmed many of the details offered by the State's witnesses. Defendant testified that on 17 April 2001 he and Stacey were arguing about issues associated with their relationship, and that when they arrived at the dirt road he got out of the car for a few minutes to "cool off." However, when he got back into the car they continued to quarrel and, after a brief exchange of profanity, Stacey hit him on the shoulder. Defendant testified that he put his hand around Stacey's neck to keep her away from him, but when she continued to struggle with him, defendant "leaned over where my seat reclined back" and saw Stacey's waitress apron. Defendant testified further that after he noticed the apron "all [he] remember[ed] was grabbing it and throwing it around her neck and holding it and she stopped moving." Defendant denied that he intended to kill Stacey, testifying that "I don't remember having no intent to do nothing. I just—after she hit me and we started fighting, I lost it; and I don't remember much at all." He also testified on direct examination that he became upset when he realized Stacey was not moving. He went around to the passenger side of the car, dragged her out on the ground, and attempted to revive her. He testified that when he strangled Stacey the apron was in one piece, but when he got her out of the car and tried to remove the apron from around her neck, the apron skirt ripped away from the apron string. When he could not get the apron string off and saw that Stacey's face was blue, defendant panicked and put her body in the vehicle's trunk.

On cross-examination, the State tried to establish that defendant had subdued or disabled Stacey *before* he strangled her, and that he had ripped the skirt part off the apron *before* twisting the apron string around her neck. The prosecutor confronted defendant with the contradiction between the evidence that defendant suffered no fingernail scratches or serious bruises during the incident, and his testimony that Stacey was a strong girl who was struggling with him even while he was choking her. He was also cross-examined about the fact that although defendant testified he had choked Stacey while they were both inside the car and he was in the driver's seat to Stacey's left, the knots on the apron string were on the *right* side of Stacey's neck. Defendant was further challenged regarding his testimony that the apron was in one piece when he strangled Stacey, and was

cross-examined about the difficulty of removing the skirt part of the apron *after* it had been wrapped twice around Stacey's neck and tied in two double knots. Defendant, however, continued to deny that he rendered Stacey unconscious before he strangled her, and testified repeatedly that he simply "didn't remember" the other details of the incident.

Following trial, the jury convicted defendant of premeditated and deliberate first degree murder, and the trial court sentenced him to a life sentence without parole. From this conviction and sentence, defendant appeals.

I.

[1] Defendant argues first that the trial court committed reversible error by allowing Detective Cole to demonstrate, over defendant's objection, how the apron string was wrapped and tied around Stacey's neck. He contends that the demonstration was inadmissible and that any probative value it may have had was greatly outweighed by its prejudicial effect. He also argues that the trial court erred by denying his motion for a mistrial based upon the demonstration. We disagree.

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2001). In a murder case, evidence is relevant if it " 'tends to shed light upon the circumstances surrounding the killing.' " *State v. Richmond*, 347 N.C. 412, 428, 495 S.E.2d 677, 685 (quoting *State v. Stager*, 329 N.C. 278, 322, 406 S.E.2d 876, 901 (1991)), *cert. denied*, 525 U.S. 843, 142 L. Ed. 2d 88 (1998). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (2001). Further, decisions regarding "[a]dmission of evidence [are] 'addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown.' " *Lane v. R.N. Rouse & Co.*, 135 N.C. App. 494, 498, 521 S.E.2d 137, 140 (1999) (quoting *Sloan v. Miller Building Corp.*, 128 N.C. App. 37, 45, 493 S.E.2d 460, 465 (1997)), *disc. review denied*, 351 N.C. 357, 542 S.E.2d 212 (2000). The same standard applies to evidence offered on rebuttal, as " '[i]t is within the trial judge's discretion to admit evidence on

rebuttal which would have been otherwise admissible, and the appellate courts will not interfere absent a showing of gross abuse of discretion.'" *State v. Anthony*, 354 N.C. 372, 421, 555 S.E.2d 557, 588 (quoting *State v. Carson*, 296 N.C. 31, 44, 249 S.E.2d 417, 425 (1978)), *cert. denied*, 354 N.C. 575, 559 S.E.2d 184 (2001), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002).

This Court has defined a demonstration as "an illustration or explanation, as of a theory or product, by exemplification or practical application." *State v. Hunt*, 80 N.C. App. 190, 193, 341 S.E.2d 350, 353 (1986). In *Hunt*, this Court held that:

> admissibility of demonstrative or experimental evidence depends as much, as for any other piece of evidence, upon whether its probative value is outweighed by the potential undue prejudicial effect it may have on defendant's case. See Rule 403, N.C. Rules Evid. In the case of a courtroom demonstration, the demonstrator may not need to be qualified as an expert . . . but a proper foundation still must be laid as to the person's familiarity with the thing he or she is demonstrating.

*Id.* (upholding admission of law enforcement officer's demonstration of the operation of alleged assault weapon, offered to rebut defendant's testimony that it discharged accidentally). Where the evidence on an issue is conflicting, the North Carolina Supreme Court has upheld demonstrations intended to illustrate flaws in the prosecution or defense theory, or to rebut a witness's testimony. *See, e.g., State v. Murillo*, 349 N.C. 573, 509 S.E.2d 752 (1998) (where defendant testified that weapon discharged accidentally, victim's sister properly allowed to demonstrate physical impossibility of wounds being inflicted as depicted in autopsy photograph unless weapon was fired intentionally), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999); *State v. Arnold*, 98 N.C. App. 518, 392 S.E.2d 140 (1990) (where State introduced xerox copies of love letters purportedly written by defendant, trial court erred by not allowing defendant to rebut this evidence with demonstration of how such a letter might be created by cutting and pasting pieces of several letters and then xeroxing the resulting document), *aff'd*, 329 N.C. 128, 404 S.E.2d 822 (1991).

Defendant herein was charged with first degree murder, defined in relevant part as "murder . . . perpetrated by means of a . . . willful, deliberate, and premeditated killing[.]" N.C.G.S. § 14-17 (2001). First degree murder differs from second degree murder in that:

The elements of first-degree murder are: (1) the unlawful killing, (2) of another human being, (3) with malice, and (4) with premeditation and deliberation. The elements of second-degree murder, on the other hand, are: (1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation.

*State v. Coble*, 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000) (citation omitted). In the instant case, defendant testified that he killed Stacey by choking her with an apron, and the record contains no evidence that this killing was lawful. Indeed, defendant acknowledged both at trial and on appeal that he is guilty of at least second degree murder. We conclude defendant's testimony was sufficient to permit the jury to convict him of second degree murder. We agree, therefore, with the defendant's assertion that "the only truly contested issue at defendant's trial" was "whether defendant killed Stacey with premeditation and deliberation." It is in regards to this crucial issue—the existence of premeditation and deliberation—that the demonstration was relevant.

The defense theory, that defendant impulsively strangled Stacey while the two of them struggled and fought, was supported primarily by defendant's own testimony. Although the defendant conceded at trial that he lost his temper, grabbed a waitress apron, wrapped it around Stacey's neck, and choked her with it, he testified that he had not intended to kill Stacey. To support this assertion, defendant also testified that the apron was intact when he choked Stacey, and that the string was not ripped away from the skirt part of the apron until he tried to remove the apron from around her neck.

The State, however, tried to convict defendant of premeditated and deliberate first degree murder based on its theory that defendant (1) deliberately struck Stacey to disable or subdue her; (2) ripped the apron string away from the skirt to fashion a ligature with which to strangle her; (3) went to the passenger side of the car and dragged Stacey out of the car; and (4) choked her from behind with the apron string. To support this theory, the State cross-examined defendant regarding certain inconsistencies between his testimony and the physical evidence, including evidence that: (1) although the defendant claimed he killed Stacey inside the car during a struggle, the inside of the car was clean and pine straw was found under the apron string around Stacey's neck; (2) although defendant contended he and Stacey were fighting while he choked her, defendant suffered no scratches from Stacey's recently applied acrylic nails; (3) although

defendant testified he was in the driver's seat on Stacey's left side when he choked her, the knots in the apron string were on the right side of her head; and (4) although defendant was insistent that the apron was in one piece when he took it from the back seat and threw it around Stacey's neck, her body was discovered with the string wrapped twice around her neck and tied with two double knots, in which strands of hair were entangled. The prosecutor vigorously cross-examined defendant about the difficulty or impossibility of removing the string from the skirt of the apron *after* it had been tied around Stacey's neck; the defendant just as strenuously denied having removed it prior to strangling her.

It was against the backdrop of this evidentiary conflict that the demonstration at issue was proffered. Using an apron string like the one found on Stacey's body and a Styrofoam mannequin's head, Detective Cole showed how the apron string was wrapped and knotted around Stacey's neck when her body was found. The State's purpose, clearly, was to show that the defendant had removed the skirt part before he choked Stacey, thus providing evidence of premeditation and deliberation. "[T]his evidence, in fact, was directly responsive to one of [defendant's] chief lines of defense[.]" *United States v. Russell*, 971 F.2d 1098, 1105 (4th Cir. 1992) (upholding admission of evidence from demonstration using weapon similar to murder weapon), *cert. denied*, 506 U.S. 1066, 122 L. Ed. 2d 161 (1993).

We conclude that the demonstration was relevant to the jury's determination of whether the defendant acted with premeditation and deliberation, and thus met the threshold test for admissibility. Moreover, Detective Cole testified to his familiarity with the apron string used to strangle Stacey, and with the autopsy photos depicting the position of the string and knots. We conclude that the State provided a proper foundation for admission of the demonstration.

We further conclude that its exclusion was not required on grounds of undue prejudice. The demonstration was brief and unemotional. Detective Cole employed a Styrofoam mannequin, rather than a live model. He was not asked to speculate on Stacey's physical or emotional experience of the choking. Additionally, the trial court sustained defendant's objections to questions that were properly within the jury's sphere, such as Detective Coles' opinion on whether it would be possible to remove the apron skirt from the apron string after it had been wrapped and tied. *See State v. Hunt*, 80 N.C. App. at 194, 341 S.E.2d at 353 (upholding demonstration of

weapons's operation where "the officer was *not* attempting to say that . . . it could not fire in the position the defendant claimed").

A demonstration is not inadmissible merely because "[t]he evidence goes straight to the heart of the . . . issue, i.e., [premeditation and deliberation.]" *Reis v. Hoots*, 131 N.C. App. 721, 729, 509 S.E.2d 198, 204 (1998), *disc. review denied*, 350 N.C. 595, 537 S.E.2d 481 (1999). Nor is it subject to exclusion simply because it might prejudice defendant.

We conclude that the demonstration was not excessively inflammatory, and that its prejudice to the defendant was limited to the prejudice inherent in all evidence that rebuts or undermines defense evidence. As we conclude that the demonstration was admissible, we necessarily conclude that the trial court did not err by refusing to grant a mistrial because of the demonstration. This assignment of error is overruled.

II.

[2] Defendant argues next that the trial court committed plain error in its instruction to the jury concerning evidence that the defendant had made a confession. The trial court instructed the jury as follows regarding evidence of a confession:

> There is evidence which tends to show that the defendant confessed that he committed the crime charged in this case. If you find that the Defendant made that confession, then you should consider all of the circumstances under which it was made in determining whether it was a truthful confession and the weight you will give to it.

The defendant contends that this instruction "was inaccurate and misleading" because, although he confessed to killing Stacey, he did not confess to commission of premeditated first degree murder, which was "the crime charged." On this basis, he asserts that the trial court's instruction was an improper expression of opinion and constituted plain error. We disagree.

"Defendant made no objection to this jury instruction at trial. Accordingly, to prevail on appeal, defendant must show that the trial court's instruction constituted plain error." *State v. Sexton*, 357 N.C. 235, 238, 581 S.E.2d 57, 59 (2003). " 'In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury probably would have

reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected.' " *State v. Berry*, 356 N.C. 490, 523, 573 S.E.2d 132, 153 (2002) (quoting *State v. Holden*, 346 N.C. 404, 435, 488 S.E.2d 514, 531 (1997), *cert. denied*, 522 U.S. 1126, 140 L. Ed. 2d 132 (1998)). We conclude that the trial court's instruction constituted neither error nor plain error.

The instruction delivered by the trial court in this case was taken verbatim from the North Carolina Pattern Jury Instruction 104.70. The North Carolina Supreme Court has previously rejected defendant's argument that use of this instruction constitutes an impermissible expression of opinion:

> The use of the words tending to show or tends to show in reviewing the evidence does not constitute an expression of the trial court's opinion on the evidence. Nor did the trial court's statement that the evidence tended to show that the defendant had confessed that he committed the crime charged amount to an expression of opinion by the trial court, because evidence had been introduced which in fact tended to show that the defendant had confessed and to the crime charged, first degree murder.

*State v. Young*, 324 N.C. 489, 495 380 S.E.2d 94, 97-98 (1989); *see also State v. Cunningham*, 344 N.C. 341, 362, 474 S.E.2d 772, 782 (1996) (upholding trial court's use of instruction). We conclude that the court's instruction is proper in factually appropriate circumstances.

In the case *sub judice*, as in *Young*, the record includes evidence "tending to show" that defendant had confessed to the charged offense of first degree murder. "Confession is defined as a 'voluntary statement made by one who is [a] defendant in [a] criminal trial at [a] time when he is not testifying in trial and by which he acknowledges certain conduct of his own constituting [a] crime for which he is on trial; a statement which, if true, discloses his guilt of that crime.' " *State v. Cannon*, 341 N.C. 79, 89, 459 S.E.2d 238, 244-45 (1995) (quoting BLACK'S LAW DICTIONARY 296 (6th ed. 1990)) (upholding trial court's giving jury the same instruction as in the instant case). In the present case, Detective Coffman testified that the defendant admitted to him that he had choked Stacey with the apron string because he was angry with her and was "tired of her junk." We conclude, therefore, that the trial court did not err by instructing the jury that there was evidence "tending to show" that he had confessed to "the crime charged." This assignment of error is overruled.

III.

**[3]** Defendant argues next that the trial court erred by denying his request for certain special instructions modifying the pertinent North Carolina Pattern Jury Instructions. We disagree. "In every jury trial, it is the duty of the court to charge the jury on all substantial features of the case arising on the evidence, whether or not such instructions have been requested." *State v. Norman*, 324 N.C. 253, 267, 378 S.E.2d 8, 17 (1989). Moreover:

> The purpose of a charge is to give a clear instruction which applies the law to the evidence in such a manner as to assist the jury in understanding the case and in reaching a correct verdict. The trial judge has wide discretion in presenting the issues to the jury. This responsibility cannot be delegated to or usurped by counsel.

*State v. Harris*, 306 N.C. 724, 727-28, 295 S.E.2d 391, 393 (1982) (citations omitted). " 'It is well established that a request for a specific instruction which is correct in law and supported by the evidence must be granted at least in substance.' " *State v. Lundy*, 135 N.C. App. 13, 23, 519 S.E.2d 73, 81 (1999) (quoting *State v. Williams*, 98 N.C. App. 68, 71, 389 S.E.2d 830, 832 (1990)), *disc. review denied*, 351 N.C. 365, 542 S.E.2d 651 (2000). However, " 'a trial court is not required to repeat verbatim a requested, specific instruction that is correct and supported by the evidence, . . . if the court gives the instruction in substantial conformity with the request.' " *State v. Lloyd*, 354 N.C. 76, 92, 552 S.E.2d 596, 610 (2001) (quoting *State v. McNeill*, 346 N.C. 233, 239, 485 S.E.2d 284, 288 (1997), *cert. denied*, 522 U.S. 1053, 139 L. Ed. 2d 647 (1998)).

At trial, defendant requested a special instruction on lack of motive. The trial court delivered the North Carolina Pattern Jury Instruction 104.10, which states:

> Proof of motive for the crime is permissible and often valuable, but never essential for conviction. If you are convinced beyond a reasonable doubt that the defendant committed the crime, the presence or absence of motive is immaterial. Motive may be shown by facts surrounding the act if they support a reasonable inference of motive. When thus proved, motive becomes a circumstance to be considered by you. The absence of motive is equally a circumstance to be considered on the side of innocence.

Defendant requested that the trial court modify this instruction by (1) instructing the jury that "If you are convinced beyond a reasonable doubt that the defendant committed the crime *of First Degree Murder*, the presence or absence of motive is immaterial," and by (2) replacing "absence of motive is equally a circumstance to be considered on the side of innocence" with "absence of motive is equally a circumstance to be considered on the side of *convicting the Defendant of some lesser degree of homicide*." (emphasis added).

Defendant contends that the instruction misled the jury by suggesting that the absence of motive was relevant *only* to consideration of whether he was innocent of all charges, and not to whether he was innocent of first degree murder and guilty instead of second degree murder. Our case law does not support defendant's position. For example, in *State v. Hales*, 344 N.C. 419, 423, 474 S.E.2d 328, 330 (1996), the trial court instructed the jury to consider motive in assessing the defendant's guilt, but *omitted altogether* the instruction that "the absence of motive is equally a circumstance to be considered on the side of innocence." The North Carolina Supreme Court did not find this to constitute prejudicial error:

> When the court instructed the jury it could consider motive, the members could infer that absence of motive could be considered in determining guilt or innocence. The evidence against the defendant was strong. . . . This lapse in the charge could not have affected the jury verdict.

*Id.* Thus, in *Hales*, the North Carolina Supreme Court held that the *failure to give any instruction at all* on lack of motive is not prejudicial error if the trial court properly instructed the jury that motive may be considered in determining whether the defendant is guilty. This Court is bound by decisions of the North Carolina Supreme Court. *See State v. Parker*, 140 N.C. App. 169, 172, 539 S.E.2d 656, 659 (2000), *disc. review denied*, 353 N.C. 394, 547 S.E.2d 37, *cert. denied*, 532 U.S. 1032, 149 L. Ed. 2d 777 (2001). We conclude that the trial court did not err by instructing the jury in accord with the pattern jury instruction on lack of motive.

**[4]** Defendant argues next that the trial court erred in its instruction on defendant's character evidence. Defendant presented evidence of his character through numerous witnesses. Members of his extended family testified that defendant witnessed incidents of serious domestic violence as a child; teachers remembered him as a student who did not cause trouble in class; adult neighbors recalled him to be gen-

erally polite and helpful; Captain Singletary, of the Columbus County Sheriff's Department, testified that defendant behaved well during his incarceration while awaiting trial; and defendant's teenage friends testified that he was usually able to control his temper, was not known to be violent, and had been affectionate with Stacey. Thus, the essential import of defendant's character evidence was that, despite his early exposure to domestic violence, defendant was considered to be a decent individual who did not get into trouble or start fights, and who was well-liked by his friends.

On the basis of this evidence, defendant requested several special instructions, which we will consider separately. First, defendant requested the jury be instructed on the character traits of nonviolence and peacefulness. The trial court's instruction differed from defendant's request in that (1) the court instructed only on "peacefulness" but not on "nonviolence," and (2) the defendant requested the court to instruct the jury that a person with the trait of peacefulness may be less likely to commit "the *crime of first degree murder*," but the court instructed that a person with the trait of "peacefulness" may be less likely to commit *"the alleged crime."*

We note that peacefulness and nonviolence are almost synonymous. Additionally, as defendant was charged with first degree murder, we find no significant difference between an instruction on the defendant's likelihood of committing first degree murder and an instruction on the likelihood of his committing the alleged offense. We conclude that the trial court did not err it its instruction. Moreover, under N.C.G.S. § 15A-1443(a) (2001), a defendant is prejudiced by non-Constitutional errors at trial *only* "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." In the present case, we conclude that there is no probability that the difference between the instruction defendant requested and the one given by the court had *any* impact on the jury's verdict. Thus, the error, if any, is harmless.

[5] Defendant next argues that the trial court committed reversible error by denying his request for an instruction on the character trait of having a "good reputation in the community." Defendant misstates the law in this regard. He argues that he was entitled to an instruction that evidence of his general "good reputation" should be considered both with regards to his guilt of the substantive offense, and also as it bears on his credibility. Defendant cites several older cases to support his assertion that the trial court's failure to instruct on defend-

ant's general good reputation constitutes reversible error. However, under the North Carolina Rules of Evidence, which have been in effect since 1 July 1984, "an *accused may no longer offer evidence of undifferentiated, overall 'good character,'* but may now only introduce evidence of 'pertinent' traits of his character." *State v. Bogle*, 324 N.C. 190, 198, 376 S.E.2d 745, 749 (1989) (emphasis added) (quoting N.C.G.S. § 8C-1, Rule 404, and *State v. Squire*, 321 N.C. 541, 546, 364 S.E.2d 354, 357 (1988)). Defendant also cites *State v. Ali*, 329 N.C. 394, 407 S.E.2d 183 (1991), in support of his contention that evidence similar to that elicited by defendant herein has been held by the North Carolina Supreme Court to constitute evidence of "good reputation" in the community. However, reputation evidence in *Ali* was introduced, not as character evidence for the trait of having a good reputation, but to support instruction on a mitigating factor for consideration by the jury in determining whether to impose the death penalty. Thus, the holding in *Ali* is not pertinent to the issue before us. We conclude that under the North Carolina Rules of Evidence the defendant was not entitled to an instruction on his general "good reputation" in the community, and that the trial court did not err by refusing this request.

**[6]** Defendant next contends that he was entitled to an instruction on the character trait of being law-abiding, and that the trial court erred by denying his request for such an instruction. We again disagree.

Defendant's evidence on the trait of being law-abiding consisted of Detective Cole's testimony that defendant had no prior criminal convictions. However:

> evidence of the lack of prior convictions is not evidence of a trait of character but is merely evidence of a fact. It does not address a trait of defendant's character. Whereas being law-abiding addresses one's trait of character of abiding by all laws, a lack of convictions addresses only the fact that one has not been convicted of a crime. Many clever criminals escape conviction.

*State v. Bogle*, 324 N.C. at 200, 376 S.E.2d at 751. In the present case, defendant testified that he had, *inter alia*, purchased and smoked marijuana; drank alcohol although he was underage; initially lied to law enforcement officers who were engaged in a criminal investigation; and strangled his girlfriend to death. Each of these is a violation of criminal law. Thus, a review of the record suggests that defendant's lack of a criminal record did not result from his being law-abiding, but simply indicates that he had not been apprehended for any of his

violations of the law. We conclude that he was not entitled to a special instruction on the character trait of being law-abiding. Accordingly, the trial court did not err by failing to deliver such an instruction.

[7] Defendant's next contention is that, upon defendant's request for an instruction on demonstrative evidence, the trial court "denied defendant's request and, instead, gave no instruction at all to the jury on how it was to consider the demonstrative evidence presented to it." The basic premise of defendant's argument—the trial court's refusal to instruct the jury on demonstrative evidence—is belied by the record. Upon defendant's request for a modified instruction on demonstrative evidence, the trial court agreed, stating:

> COURT: Mr. Willis has asked for an instruction on demonstrative evidence. It appears to be appropriate with the following modification: That I simply indicate—have you been furnished a copy of it?

> [PROSECUTOR]: Yes Sir.

> COURT: All right. I'll modify it to the extent, "In deciding the issues in the trial of this case" as opposed to specifically referring to the first degree murder or second degree murder, so I modified it to that extent, so I'll give that instruction with the modification.

Thereafter, the trial court instructed the jury as follows on demonstrative evidence:

> I instruct you that evidence which has been permitted for demonstrative purposes can be used for that purpose and that purpose only. If you find that demonstrative evidence which may have been admitted in this case does in fact demonstrate some fact in this case, you may consider that evidence together with all of the other evidence in this case in deciding the issues in the trial of this case.

This assignment of error is overruled.

IV.

[8] Finally, defendant argues that the trial court committed reversible error by denying defendant's motion to dismiss the charge against him, on the grounds that the "short form" indictment by which he was charged:

did not allege that the killing was committed with premeditation and deliberation; did not provide notice to defendant or the public that he was accused of first degree murder and did not confer jurisdiction upon the trial court to try defendant for first degree murder.

However, as defendant acknowledges, the North Carolina Supreme Court has previously rejected defendant's argument. *See, e.g., State v. Wallace,* 351 N.C. 481, 528 S.E.2d 326, *cert. denied,* 531 U.S. 1018, 148 L. Ed. 2d 498 (2000). This Court is bound by precedent of the North Carolina Supreme Court. *See Forsyth Memorial Hosp. v. Chisholm,* 342 N.C. 616, 620, 467 S.E.2d 88, 90 (1996) (where North Carolina Supreme Court had "not had occasion to reconsider" relevant issue since 1858, "the Court of Appeals . . . was required to . . . follow[] the precedent established by this Court . . . more than a century earlier"); *Calloway v. Memorial Mission Hosp.,* 137 N.C. App. 480, 482, 528 S.E.2d 397, 399 (2000) (noting that this Court is "bound by decisions of our Supreme Court [u]ntil either that body or the General Assembly acts"). Accordingly, this assignment of error is overruled.

We conclude the defendant had a fair trial, free of prejudicial error. Accordingly, his conviction is

Affirmed.

Chief Judge EAGLES and Judge BRYANT concur.